# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

EVON D. H.,[1]

        Plaintiff,

vs.

KILOLO KIJAKAZI, Commissioner of
Social Security,

        Defendant.

No. 22-CV-1018-CJW-KEM

**REPORT AND**
**RECOMMENDATION**

---

## *Table of Contents*

I.     BACKGROUND.................................................................... 2
     A.    *Prior Benefits*............................................................. 3
     B.    *Childhood Disability Benefits (CDB)* ............................. 4
II.    *JURISDICTION* ............................................................ 10
III.   *DISCUSSION OF THE MERITS* ....................................... 15
     A.    *Step Two*.................................................................. 15
          1.   *Application of Collateral Estoppel* ..................... 17
          2.   *Full Development of the Record on Remand*........................ 22
     B.    *Appointments Clause Challenge* ................................. 29
IV.   *CONCLUSION* ............................................................. 29

Plaintiff Evon D. H. seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for childhood disability benefits (CDB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

Claimant filed a claim for benefits under a regulation that permits a disabled adult to qualify for benefits on a deceased parent's earnings record, so long as the adult child's disability "began before [she] became twenty-two years old."[2] The administrative law judge (ALJ) concluded (at step two) that Claimant had not proved she suffered from a medically determinable impairment prior to age 22. Claimant argues that the ALJ erred in applying the doctrine of collateral estoppel based on a prior benefits award, in developing the record (of both the "lost file" of her prior award and of her intellectual disability), and in ultimately concluding she did not meet the de minimus standard of step two. Claimant also raises an Appointments Clause challenge. I recommend **reversing** the ALJ's decision and **remanding** for further proceedings.

## I.    BACKGROUND[3]

Claimant was born in August 1972. AR 721.[4] She did not graduate from high school. The last entry in her education records is for ninth grade, when she received an F in most of her classes. AR 387. She reports that the highest grade of school she completed was tenth grade in 1988. AR 77, 176. Claimant received special education services in school, and she had many unexcused absences throughout grades 7, 8, and 9. AR 176, 324, 390, 404. The record contains a 2018 letter from Claimant's high school indicating that Claimant had received special education services "for her mild mental handicap." AR 404. Claimant's education records note she needed help with speech and language skills. AR 388. She worked for short periods between 1999 and 2006 as a cashier, cook, and housekeeper, and she reported that she has not worked since 2006. AR 176. Claimant has received substance abuse treatment and has a long history of

---

[2]  **20 C.F.R. § 404.350(a)(5).**

[3]  For a more thorough overview, see the Joint Statement of Facts (Doc. 12).

[4]  "AR" refers to the administrative record below, filed at Docs. 7-1 to 7-18.

mental health treatment consisting of medication, therapy, and multiple hospitalizations. AR 18-19, 73.

### A. *Prior Benefits*

Claimant previously applied for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, and was found disabled in 1995. AR 72, 722. A 2004 hospital admission for mental health treatment noted that Claimant was receiving SSI benefits. AR 323.[5] She continued to receive benefits and did not go through a continuing disability review (CDR) until 2018 (when she filed the CDB application at issue here). *See* AR 72. An October 5, 2018 review by a state agency consultant for Claimant's CDR noted that it was a "lost folder claim" and that an August 17, 1995 decision had awarded Claimant benefits based on intellectual disability. AR 453. The state agency consultant stated that Claimant's residual functional capacity (RFC) as of August 1995 included marked limitations in making simple-work related decisions; marked limitations in concentrating, persisting, and maintaining pace; and moderate limitations in interacting with others. AR 447, 451, 454. She concluded:

> [Medical impairment] related to the ability to work is unable to be assessed because there is inadequate . . . information [on the original 1995 decision] to compare changes in symptoms, signs, and/or lab findings. Claimant has no more current RFC or functional limitations than shown at the [1995 decision] RFC, thus a continuance is warranted because [medical impairment] cannot be established.

AR 454. A different state agency consultant stated on October 9, 2018 that Claimant's SSI benefits would be continued for one year "due to lost folder issues," but noted that she "met the listing for [intellectual disability]" in the prior August 17, 1995 decision. AR 72, 76. An October 9, 2018 CDR cover form indicates that Claimant's disability

---

[5] A case manager at that time noted that Claimant "reads at the 2nd grade level and classes will have to be adapted to her limitations." AR 315.

3

began the day before she turned 22 in August 1994 and that her primary diagnosis was intellectual disorder and her secondary diagnosis was depression, bipolar, and related disorders. AR 79.

In response to a request for information about her 1995 claim, the Commissioner reported on January 3, 2019, that "[o]ur records show that you became disabled [in August 1972]" on the day she was born. AR 249.

Claimant's SSI benefits were again continued on August 21, 2020. AR 768. The cover form for this CDR review states that Claimant's disability began on August 17, 1995 (the date of the prior decision, and after Claimant turned 22), with a primary diagnosis of schizophrenia spectrum and other psychotic disorders and a secondary diagnosis of anxiety and obsessive-compulsive disorders. AR 768.

### B. Childhood Disability Benefits (CDB)

Claimant applied for childhood disability benefits on April 3, 2018. AR 84. Claimant alleged disability beginning in August 1994 on the day before she turned 22 years old. *Id.* She listed "learning disability" as her medical condition. *Id.*

On July 17, 2018, Claimant met with psychologist Jeannie Sims, PhD, for a consultative evaluation (CE) with cognitive testing. AR 425. Claimant reported that she sees and hears people who are not there and that the onset of her schizoaffective disorder was sometime between ages 17 and 22. AR 425. Dr. Sims reported that Claimant was rocking back and forth in the waiting room and appeared extremely frightened. AR 426. Dr. Sims also noted that the friend who accompanied Claimant helped her fill out answers, and Claimant exhibited memory problems. AR 425-27. Dr. Sims reported Claimant received an "extremely low" score on a mental functioning test she administered, but "[b]ecause [Claimant's] functioning at the time was strongly impacted by anxiety and psychosis, it is not valid as an estimate of her cognitive functioning." AR 427. Dr. Sims reported that Claimant struggled with recall and following simple

4

directions, and she "estimate[d] cognitive functioning to be in the mild intellectual disability range." *Id.* Dr. Sims stated that Claimant "presented as actively psychotic with symptoms consistent with Schizoaffective Disorder, Bipolar Type, Generalized Anxiety Disorder (severe), and Panic Attacks," and noted she "also suspect[ed] an intellectual disability." AR 428. Dr. Sims did not administer formal cognitive testing because of Claimant's hallucinations, as "results would have reflected impairment due to psychosis more than intellectual functioning." *Id.*

The next month, on August 27, 2018, Claimant met with Dr. Sims again for cognitive testing. AR 431. At the beginning of that appointment, Claimant's accompanying friend informed Dr. Sims that Claimant's daughter had recently been in a serious accident and noted Claimant did not understand why she could not be with her daughter, so the friend wished Dr. Sims "good luck" with testing. *Id.* Dr. Sims administered formal cognitive testing (the WAIS-IV), but the results were "not considered valid due to questions about effort and credibility." AR 433. Dr. Sims noted that Claimant achieved the lowest possible score in every category and that an individual with those scores "would not be able to live alone, even with ample support." AR 433-34. Dr. Sims concluded Claimant "completed cognitive testing in an invalid manner," which "calls into question the symptom presentation and history and heightens the need for reliable collateral information."[6] AR 434.

Claimant's CDB application was denied on initial review in October 2018 and on reconsideration in December 2018. AR 76, 90-91. Both state agency examiners concluded the evidence in the file was insufficient to show an impairment prior to Claimant's twenty-second birthday in August 1994. *Id.* On initial review, the state agency consultant stated:

---

[6] Claimant's counsel notes that she was taking a stronger dosage of haldol and lamotrigine than usual at the time of testing. *See* AR 432, 489.

[T]here are treatment notes in file dating back to 2008, [but] this is after claimant turned 22 years of age. Claimant was allowed disability benefits dating back to age 22 for [intellectual disability]. However, the prior folder has been destroyed and there has never been a CDR completed. Claimant's apparent prior [medically determinable impairment] of [intellectual disability] is completely inconsistent with current evidence in file. Claimant's presentation at the initial CE and the subsequent CE for testing was quite extreme. She produced an invalid intellectual assessment secondary to lack of effort. Claimant did not know her correct age, birthday, or address and rocked almost continuously. Other medical records in file do not describe claimant as so impaired. For example, none of the medical records indicate significant concerns regarding her cognitive abilities or even a rule out diagnosis of [borderline intellectual functioning] or [intellectual disability]. At the time of her 5/18 psychiatric appointment . . . , [mental status examination] was within normal limits and she appeared to be of "average" intelligence. School records document that claimant received "special education services for her mild mental handicap," . . . . [but] this was not further clarified in terms of what that might indicate in terms of a diagnosis.

AR 74. The consultant then recommended review of Claimant's SSI benefits for possible fraudulent activity. *Id.*

Claimant requested review before an ALJ. The ALJ held an administrative hearing by video on December 2, 2019. AR 15, 45. Claimant testified about her difficulties in school including confusion, lack of understanding, and hallucinations. AR 55, 59-60. On January 23, 2020, the ALJ issued an unfavorable decision. AR 15-20. The ALJ outlined the familiar five-step process set forth in the regulations[7] for determining

---

[7] "The definition of disability for CDB cases is the same as for Disability Insurance Benefit . . . cases." **Program Operations Manual System (POMS) § RS 203.080(A)(2)**. "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 404.1520(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

disability.  *Id.*  At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date in August 1994.  AR 17.  At step two, the ALJ found that prior to the date Claimant reached 22 years old, "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment."  AR 18.  The ALJ reviewed the medical records and evaluations, including those of Dr. Sims, and noted the lack of evidence in the file prior to 2004.  AR 19.  The ALJ found "[t]here is no evidence of ANY diagnosed impairment WHATSOEVER prior to age 22."  *Id.*  The ALJ rejected Claimant's argument that her prior SSI award in 1995 established disability before age 22 under collateral estoppel principles.  AR 18.  The ALJ noted "there is no evidence the claimant was paid [SSI] benefits prior to age 22."  *Id.*  The ALJ also stated that the 1995 disability decision was based on RFC (at steps 4 and 5), rather than meeting a listing (at step 3), and that it was issued after Claimant turned 22 and thus did not establish disability prior to age 22.  AR 18.  The ALJ cited one of the state agency consultant's descriptions of the 1995 decision from the October CDR, which was exhibited, as well as "associated documents from the claimant's prior CDB filing in 2012" (which do not seem to be in the record).  AR 18, 454.

The Appeals Council denied review on her CDB claim.  AR 1.  Claimant then filed an action in this court.[8]  Claimant's complaint asserted (among other things) that the ALJ erred by not applying collateral estoppel principles and in developing the record concerning Claimant's limitations prior to age 22.[9]  The court granted the parties' joint motion to extend the briefing deadlines asserting that "[t]his extension is needed for Social Security to find and provide what it is able from a 1995 award file."[10]  Then before any briefs were filed, the Commissioner filed an unopposed (boilerplate) motion to remand

---

[8]  *See Evon D. H. v. Kijakazi,* 20-CV-1045-KEM, Doc. 4 (N.D. Iowa Oct. 13, 2020).

[9]  *Id.*

[10]  *Id.*, Doc. 25 (Sept. 2, 2021).

7

for further administrative proceedings under sentence four of 42 U.S.C. § 405(g), which the court granted.[11]

The Appeals Council issued a remand order on November 1, 2021. AR 784-86. The Appeals Council found "[f]urther evaluation as to whether the claimant had a severe, medically determinable impairment prior to age 22 is necessary." AR 784. The Appeals Council stated the ALJ "did not address evidence in the administrative record that could indicate the claimant had been found disabled prior to 22"—specifically, the October 9, 2018 CDR form (stating Claimant's disability began the day before she turned 22)[12] and the January 3, 2019 letter (stating Claimant's disability began the day she was born). AR 785. The Appeals Council directed the ALJ on remand to "[d]etermine whether the claimant had a severe medically determinable impairment and was disabled prior to age 22," and "if necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments." *Id.* The Appeals Council also instructed the ALJ to hold a new hearing and "take any further action needed to complete the administrative record and issue a new decision." AR 786.

The ALJ held a new hearing by video on March 30, 2022. AR 730. The only new evidence consisted of updated earnings records, mental health treatment records from 2020, a 2020 letter from Claimant's therapist, and recent screenshots of Claimant's social media account from the CDR review. AR 881-1026. On April 14, 2022, the ALJ issued an unfavorable decision. AR 719-24. The ALJ again determined at step 2 that prior to the date Claimant reached 22 years old, "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." AR 722. The ALJ continued to rely on the lack of medical records and intellectual testing in the

---

[11] *Id.*, Docs. 27-28 (Oct. 15 & 21, 2021).

[12] The Appeals Council stated "under agency rules, an individual is considered to reach his or her birthday the day before the actual date of the birthday," but noted the ALJ did not address this rule and considered the day before Claimant's twenty-second birthday as the alleged onset date. AR 785.

record prior to Claimant turning 22. *Id.* The ALJ rejected the application of collateral estoppel based on the two SSI documents identified by the Appeals Council. *Id.* The ALJ found that because the current CDB "claim is a Title II claim," the prior SSI claim under Title XVI "cannot preclude/estop adjudication of the [CDB] claim," because the application of collateral estoppel requires "the same title of social security." AR 722. The ALJ concluded that in the prior SSI claim, "[t]he agency never affirmatively adjudicated that the claimant had been disabled prior to age 22; and the fact that it was mistakenly referenced that the claimant had been disabled since the day before her 22nd birthday [in] one exhibit and since birth in another exhibit does not prohibit the undersigned from making a different finding with regard to this decision." AR 723. The ALJ rejected Claimant's testimony that "she has been receiving benefits since she turned 18" and that "she received benefits as a child as well," noting that "a review of the claimant's payment records reveals that she actually has only been receiving benefits since 1995 (well after her 22nd birthday) with an Established Onset Date of her previous SSI . . . application date in June 1995." *Id.* The ALJ did not offer a citation to support this proposition, and the record does not appear to contain these payment records.[13]

Claimant filed written exceptions dated April 26, 2022. AR 705-07. Believing the exceptions to be untimely (further addressed below), the Appeals Council did not rule on the exceptions. Claimant has since withdrawn the exceptions. Doc. 23.

On August 12, 2022, Claimant filed a complaint in this court, seeking judicial review of the Commissioner's decision (Doc. 1). The parties briefed the issues (Docs.

---

[13] The Commissioner cites a "summary report" from the CDR, which contains a table stating that the initial decision awarding benefits was issued August 17, 1995, and that the CDR decision continuing benefits was issued October 11, 2018. AR 1011. When the SSI decision was initially issued does not mean that it did not award benefits based on an onset date prior to its issuance, nor that Claimant did not receive payments before its issuance. Thus, the Commissioner's citation does not provide support for the ALJ's statement about payment records.

9

12-15), and the Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II.    JURISDICTION

Federal courts have limited jurisdiction, and a court must raise the issue of subject-matter jurisdiction *sua sponte* if it discovers jurisdiction may be lacking.[14] "The only avenue for judicial review" of a denial of Social Security benefits "is 42 U.S.C. § 405(g)."[15]  That statute provides (in relevant part):

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.[16]

Ordinarily, the Commissioner's decision does not become final until it has gone through four levels of review:  the initial review; reconsideration; a hearing and decision issued by an administrative law judge (ALJ); and finally, action by the Appeals Council, either denying the claimant's request for further review (in which case the ALJ's decision becomes the final decision of the Commissioner) or granting review and issuing its own decision.[17]  Generally speaking, by regulation, the claimant has sixty-five days from the

---

[14]    ***Sadler v. Green Tree Serv., LLC***, 466 F.3d 623, 625 (8th Cir. 2006); *accord **Head v. Kijakazi***, No. 4:21-CV-00916-ERE, 2022 WL 481198, at *1 (E.D. Ark. Feb. 16, 2022).

[15]    ***Mathews v. Eldridge***, 424 U.S. 319, 327 (1976).

[16]    **42 U.S.C. § 405(g)**.

[17]    *See* **20 C.F.R. §§ 404.900, 404.981**; *see also **Walker-Butler v. Berryhill***, 857 F.3d 1, 2 (1st Cir. 2017).

10

date of the Appeals Council's decision (whether it grants or denies review) to file for review in federal court.[18]

Special rules apply to Appeals Council review of decisions previously remanded by a federal court. The claimant does not have to request review by the Appeals Council for the ALJ's decision to become final. If the claimant does not file written exceptions requesting Appeals Council review, the Appeals Council has sixty days to sua sponte grant review of the ALJ's decision; and if it does not, the ALJ's decision automatically becomes the final decision of the Commissioner.[19] The claimant then has sixty days to file for judicial review in federal court (one hundred twenty days from the date of the ALJ's decision).[20]

The claimant does not *have* to forgo Appeals Council review in remanded cases, however. The regulations provide the claimant has thirty days from receipt of the ALJ's decision to file written exceptions requesting Appeals Council review.[21] If the claimant files timely written exceptions, the ALJ's decision does not automatically become final after sixty days; instead, either the Appeals Council issues a notice declining review (and the ALJ's decision then becomes final) or the Appeals Council grants review and issues its own decision.[22] Thus, when the claimant files *timely* written exceptions, finality operates much in the same way as the usual case; it is only when the claimant declines to file written exceptions that the procedure is different for cases that have previously been remanded from federal court. Importantly, however, untimely written exceptions are

---

[18] *See Bess v. Barnhart*, 337 F.3d 989-990 (8th Cir. 2003) (citing **20 C.F.R. §§ 404.901, 422.210**).

[19] *See* **20 C.F.R. § 404.984(a), (c), (d)**.

[20] *Walker-Butler*, 857 F.3d at 3-4.

[21] **20 C.F.R. § 404.984(b)**.

[22] *See id.*; *see also Selvey v. Astrue*, No. 1:06cv0594 DLB, 2007 WL 1456145, at *4 (E.D. Cal. May 16, 2007); *Petty v. Astrue*, 550 F. Supp. 2d 1089, 1096 (D. Ariz. 2008); *cf. Walker-Butler*, 857 F.3d at 2 n. 1.

11

treated as if no exceptions have been filed at all, and the ALJ's decision automatically becomes final after sixty days with no action by the Appeals Council.[23]

Here, the record contains written exceptions dated April 26, 2022. AR 705-07. These exceptions appear to be timely, as that date is within thirty days of the ALJ's April 14, 2022 decision. The complaint and joint statement of facts state that no written exceptions were ever filed. Docs 1, 12. I thus held a hearing with the parties to help determine this jurisdictional issue. Docs. 18, 22.

At the hearing, Claimant's counsel indicated that he too had been concerned about the exceptions and the Appeals Council's failure to rule on them, pointing to a request for an extension of time to file the joint statement of facts, in which he noted there was an issue regarding the timeliness of the written exceptions. Doc. 9. At the hearing, the parties explained that the written exceptions had not been filed correctly; they were submitted in the manner of requesting an ALJ hearing, rather than Appeals Council review. The Social Security Administration did not "route" the exceptions to the right place until after the thirty days for filing written exceptions had lapsed. Thus, the Appeals Council treated the exceptions as untimely (and never ruled on them, given that this is a previously remanded case). At the time of filing the joint statement of facts, counsel for the Social Security Administration explained this to counsel for Claimant, and the parties agreed to proceed as if the written exceptions were untimely. Now, however, counsel for the Social Security Administration admits that submitting the exceptions to the wrong department of the Social Security Administration does not render them untimely. Claimant's counsel also noted hesitancy to argue the exceptions were untimely (he did not want to create bad precedent for future cases). Both parties, however, wanted the court to rule on the merits of this fully briefed case. The parties agreed that the easiest

---

[23] *McMackins v. Saul*, No. 4:19-CV-775-BRW-BD, 2020 WL 2561940, at *2 (E.D. Ark. May 19, 2020), *report and recommendation adopted,* 2020 WL 2952973 (June 3, 2020) (clear error review).

12

course of action would be for Claimant to withdraw the written exceptions, rendering the ALJ's decision "final" and thus clearly establishing subject-matter jurisdiction. Claimant has since filed the notice that she submitted to the Appeals Council, "waiv[ing her] right to have the Appeals Council review" the written exceptions. Doc. 23.

As noted, § 405(g) provides for judicial review of "any final decision . . . made after a hearing." The Supreme Court has explained that "this condition consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the [Commissioner] in a particular case."[24]

> The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. And some decision by the Secretary is clearly required by the statute.[25]

Thus, the Supreme Court has held that a district court has jurisdiction under § 405(g) to address a claimant's challenge to a Social Security statute on constitutional grounds where the claim only went through initial review and reconsideration and was not presented to the ALJ or Appeals Council.[26] The Court noted:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.[27]

The Court reasoned that administrative exhaustion would not be served when "the only issue is the constitutionality of a statutory requirement, a matter which is beyond [the

---

[24] *Mathews*, 424 U.S. at 328.

[25] *Id.*; *accord* **Smith v. Berryhill**, 139 S. Ct. 1765, 1773-74 (2019).

[26] *Weinberger v. Salfi*, 422 U.S. 749, 753-54, 764-67 (1975).

[27] *Id.* at 765.

13

Commissioner's] jurisdiction to determine."[28]  The Court thus held that when the Commissioner determines further exhaustion would be futile, "full exhaustion of internal review procedures is not necessary for a decision to be 'final' within the language of § 405(g)."[29]  Because the Commissioner did not challenge the sufficiency of administrative exhaustion in that case, the Court held subject-matter jurisdiction existed to address the claimant's constitutional challenge, despite no request for an ALJ hearing or Appeals Council review.[30]

Here, the Appeals Council determined Claimant's written exceptions were untimely, and the parties proceeded as if the ALJ's decision became final sixty days after its issuance (as is the case for previously remanded decisions where no timely written exceptions are filed).  There is no danger of the court prematurely interfering with agency processes under the circumstances.  The court finds that the Commissioner waived any exhaustion requirement by deeming the objections untimely earlier in this case.[31]  I recommend finding that the court has subject-matter jurisdiction.

In addition, Claimant has since withdrawn the written exceptions to the Appeals Council.  A district court has held that subject-matter jurisdiction exists when the claimant files written exceptions to an ALJ's decision in a previously remanded case, and then later withdraws the objections after filing the federal court case; the court treated the ALJ's decision as final under the rules for previously remanded cases in which written

---

[28] *Id.*

[29] *Id.* at 766-67.

[30] *Id.* at 767.

[31] *See Ahghazali v. Sec'y of Health & Hum. Servs.*, 867 F.2d 921, 926-27 (6th Cir. 1989) (holding that Commissioner waived exhaustion requirement when answer stated Appeals Council's prior decision was final and admitted district court had jurisdiction under § 405(g), despite Commissioner's later argument that claimant did not properly exhaust administrative remedies).

14

exceptions are not filed.[32]  In addition, the Commissioner agreed at the hearing that if Claimant withdrew the written exceptions, the ALJ's decision would automatically become final under the rules governing previously remanded cases when no written exceptions are filed.  Thus, there is another basis for subject-matter jurisdiction.

## III.  DISCUSSION OF THE MERITS

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole."[33]  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[34]  The court "do[es] not reweigh the evidence or review the factual record de novo."[35]  If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[36]

Claimant argues that the ALJ erred at step two in failing to find she suffered from a mental impairment.  Claimant argues that the ALJ incorrectly applied the doctrine of collateral estoppel.  She also contends that evidence of her mental disability should have been more fully developed, but even without supplementation of the record, the ALJ erred in finding she did not meet the de minimus standard of step two.  Claimant also raises an Appointments Clause challenge.

### A.  Step Two

During step two, whether evaluating a physical or mental impairment, the ALJ

---

[32]  *Petty*, 550 F. Supp. 2d at 1095-96.

[33]  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**.

[34]  *Kirby*, 500 F.3d at 707.

[35]  *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

[36]  *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

15

must first "determine whether [a claimant] ha[s] a medically determinable . . . impairment[]" that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."[37] A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source."[38] If the ALJ determines the claimant suffers from a medically determinable mental impairment, the ALJ must next decide whether the impairment is severe by evaluating the degree of functional limitation caused by the impairment.[39] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities,"—for example, the ability to "[u]nderstand[], carry[] out, and remember[] simple instructions; . . . [u]se . . . judgment; . . . [r]espond[] appropriately to supervision, [coworkers,] and usual work situations; [or] . . . [d]eal[] with changes in a routine work setting."[40] An impairment is not severe if it "would have no more than a minimal effect on the claimant's ability to work."[41] The ALJ must apply a "special technique" to evaluate the severity of a mental impairment and consider the claimant's limitations in "four broad functional areas . . . : [u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."[42] Although subject to exception, as a general rule, if the claimant suffers no more than mild limitations in each category, the claimant's mental impairments are not severe.[43]

---

[37] **20 C.F.R. § 404.1521**; *see also* **20 C.F.R. § 404.1520a(b)(1)**.

[38] **20 C.F.R. § 404.1521**.

[39] **20 C.F.R. § 404.1520a(b)-(d)**.

[40] **20 C.F.R. §§ 404.1520(c), 404.1522**.

[41] *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003) (quoting *Simmons v. Massanari*, 264 F.3d 751, 755 (8th Cir. 2001)); *accord* **20 C.F.R. § 404.1520a(d)(1)**.

[42] **20 C.F.R. § 404.1520a(c)(3)**.

[43] **20 C.F.R. § 404.1520a(d)(1)**.

Claimant argues the ALJ erred in finding no evidence she suffered a medically determinable impairment prior to turning 22 in August 1994. Claimant argues her prior award of SSI benefits in 1995 establishes she suffered from a severe impairment before turning 22 under principles of collateral estoppel. Claimant also argues the ALJ erred in developing the record related to her prior claim and intellectual disability.

### 1. Application of Collateral Estoppel

Claimant argues that the ALJ erred in rejecting the application of collateral estoppel based on the 1995 award of SSI benefits. Claimant argues that the ALJ incorrectly applied the doctrine by stating that collateral estoppel applies only when the claims fall under the same title of the Social Security Act. The Commissioner agrees that the ALJ erred in stating that collateral estoppel requires the decisions to be from the same title but asserts that "[d]ue to the entirety of the record and the collateral estoppel guidelines, this error was harmless." Doc. 14 at 7.

The Social Security regulations and the Hearing, Appeals and Litigation Law Manual (HALLEX) address the doctrine of collateral estoppel. Both are clear that collateral estoppel may apply to a factual finding under a different title of the Social Security Act. The regulations provide:

> An issue at your hearing may be a fact that has already been decided in one of our previous determinations or decisions in a claim involving the same parties, but arising under a different title of the Act . . . . If this happens, the [ALJ] will not consider the issue again, but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong."[44]

HALLEX I-2-2-30 similarly states:

> When an [ALJ] has for decision an issue which has already been decided in a previous determination or decision in a claim involving the same claimant, but arising under a different title of the Social Security Act, the ALJ will not consider the issue again. In this situation, the ALJ will apply the

---

[44] **20 C.F.R. § 404.950(f)**.

> doctrine of collateral estoppel and accept the factual finding made in the
> previous determination or decision, unless there are reasons to believe that
> it was wrong."[45]

A note to HALLEX I-2-2-30 states that "[c]ollateral estoppel differs from res judicata in that res judicata applies to final determinations or decisions of the Commissioner made under the same title, about the individual's rights on the same facts and on the same issue or issues."[46]    In addition, the Social Security Administration's Program Operations Manual System (POMS) provides that a potential collateral estoppel situation exists when the new claim is a CDB claim and the prior favorable determination is "SSI adult disability with an [estimated onset date] between ages 18-22."[47]    The ALJ erred in concluding that collateral estoppel could not apply because the claims fell under different titles.

The Commissioner argues that this is not the end of the analysis for two reasons: (1) when the Listing of Impairments has been revised, collateral estoppel may not apply, and (2) collateral estoppel applies only when the two claims have overlapping time frames.  POMS provides rules for applying collateral estoppel: "The claims must have a common issue.  A common issue exists when two or more claims share an overlapping period and are/were decided under the same rules."[48]    "A prior favorable determination or decision is not adopted when the rules for determining disability applicable in the new claim are different from the rules that were applied in the prior determination or decision."[49]    POMS states, "[w]hen the basis for the prior favorable determination or decision was meeting or equaling a listing, and that listing has substantially changed or

---

[45]  Available at www.ssa.gov/OP_Home/hallex/I-02/I-2-2-30.html (last updated May 11, 2022) (citing **20 C.F.R. § 404.950(f)**).

[46]  *Id.* (emphasis omitted).

[47]  **POMS § DI 27515.001(C)**.

[48]  **POMS § DI 27515.001(D)**.

[49]  **POMS § DI 27515.001(E)(1)**.

become more restrictive (i.e., more difficult to satisfy), collateral estoppel does not apply."[50]

POMS includes a table of the listings that have substantially changed or become more restrictive.[51] It notes that the listings for mental disorders (Listing 12.00 *et seq.*) have changed and states: "When the basis for the prior favorable determination or decision was meeting or equaling a 12.00 listing before 01/17/2017, collateral estoppel does not apply and a new determination is required."[52]

Here, there is some evidence that Claimant was found disabled in 1995 based on Listing 12.05, governing intellectual disability. AR 76. Claimant argues that the POMS table is not conclusive as to the application of collateral estoppel. There are several ways a person can be found disabled under Listing 12.05, and Claimant argues that some subparts of Listing 12.05 from 1995 are less restrictive than the current Listing 12.05, but some are more so. Claimant's argument focuses exclusively on the "more restrictive" aspect of the POMS directive and does not address the "substantially changed" provision. The POMS guidance does not state that the listing must be substantially changed *and* more restrictive. And in any event, the new Listing 12.05 provisions Claimant argues are "less restrictive" still contain different elements such that a finding Claimant met Listing 12.05 in 1995 would not necessarily mean she met Listing 12.05 in its current

---

[50] **POMS § DI 27515.005(B)**.

[51] *Id.*

[52] Even though POMS do not have the force of law, *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000), "the POMS are entitled to respect as publicly available operating instructions for processing Social Security claims," *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 951 (8th Cir. 2004). "As an interpretation of a regulation promulgated by the Commissioner, the POMS control unless they are inconsistent with the regulation or plainly erroneous." *Rodysill v. Colvin*, 745 F.3d 947, 950 (8th Cir. 2014).

19

iteration. *See* Doc. 13 at 9-11 (setting out both versions of Listing 12.05). Therefore, collateral estoppel based on the listings would not apply.[53]

But here, it is not clear whether the prior 1995 disability determination was based on the listings. Although some evidence suggests as much (AR 76), other evidence suggests that the prior 1995 disability determination was based on an RFC finding (AR 18, 454). In addition, here, the ALJ did not make it past step two, finding that there was no evidence Claimant suffered from a medically determinable impairment prior to age 22. Whether the prior 1995 determination was based on the listings (at step three) or based on RFC (at steps four and five), Claimant was necessarily found to have suffered from a medically determinable impairment (at step two). Although collateral estoppel might not apply to the ultimate disability determination (if the prior determination were based on the listings), it could apply to establish that Claimant suffered from a severe medically determinable impairment (intellectual disability).

For collateral estoppel to apply, the prior 1995 claim must involve an overlapping time frame to the current claim. In the current claim, the ALJ analyzed whether Claimant suffered a medically determinable impairment prior to one day before her twenty-second birthday. AR 721. The timeframe covered by the prior 1995 claim is unclear: it is variously described as finding Claimant disabled as of her date of birth (AR 749, 1010); as of the day before her twenty-second birthday (AR 79); and as of the date of the decision (after her twenty-second birthday) (AR 768). In addition, if the 1995 SSI award were indeed based on Listing 12.05, then it was necessarily determined at that time that Claimant's intellectual disability began prior to age 22, as that is one of the requirements

---

[53] *See, e.g.,* ***Bonnell v. Kijakazi***, No. CV 21-73, 2023 WL 3739068, at *3-4 (E.D. Pa. May 30, 2023) (rejecting collateral estoppel application without an analysis of whether the application was more restrictive and holding that "[i]t is not reasonably open to debate that the criteria for all 12.00 Listings, pertaining to mental health, were changed effective 2017," and that the "change in mental health criteria in 2017 means that the ALJ was not obligated to find [claimant] disabled because of the 2013 determination" finding her disabled under Listing 12.04).

of meeting Listing 12.05 (both then and now). *See* Doc. 13 at 9-11. Thus, there is some evidence that the prior determination found that Claimant suffered from a severe medically determinable impairment prior to her twenty-second birthday—in which case, collateral estoppel would apply.

In sum, we know that in 1995, Claimant was found to suffer from intellectual disability, a severe medically determinable impairment. We know that she was found disabled because of that impairment (either based on the listings or based on her RFC). We do not know whether the onset date for that impairment was before or after her twenty-second birthday—but if it was before, then collateral estoppel would bar the ALJ's finding here that Claimant did not suffer from a medically determinable impairment prior to age 22. POMS guidance provides that "[w]hen the basis for the prior favorable determination or decision is unknown, collateral estoppel does not apply."[54] But as will be discussed further below, the Social Security Administration appears to have more information about the prior 1995 decision than appears in the record. I recommend finding that the ALJ's rejection of collateral estoppel based on the 1995 decision is not supported by substantial evidence and that further development of the record is required.[55]

---

[54] **POMS § DI 27515.001**(6).

[55] The ALJ noted in passing that the Claimant filed a prior CDB claim in 2012, which was denied on initial review (and not appealed further), and that "[i]t could be argued . . . that the claimant's prior determination denying her CDB claim in 2012 was actually Res Judicata." AR 723; *see also* AR 67. Under general principles of res judicata, "[i]f two or more courts render inconsistent judgments on the same claim or issue, a subsequent court is normally bound to follow the most recent determination that satisfies the requirements of res judicata." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (emphasis omitted). On the other hand, "res judicata in administrative proceedings [is] not applied as rigidly as res judicata in ordinary judicial proceedings." *Carney v. Califano*, 459 F. Supp. 537, 539 (W.D. Mo. 1978), *aff'd*, 598 F.2d 472 (8th Cir. 1979) (per curiam). Given that the prior CDB claim was denied without a hearing, not appealed, and likely involved Claimant (who suffers from intellectual disability) representing herself, there is a question whether it would bar a subsequent claim. *Cf. Boock v.*

(Footnote continued . . .

21

## 2. *Full Development of the Record on Remand*

Claimant argues that the ALJ failed to fully develop the record on remand. As previously detailed, the Appeals Council directed the ALJ on remand to "[d]etermine whether the claimant had a severe, medically determinable impairment and was disabled prior to age 22," and "if necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments." AR 785. The Appeals Council stated that the ALJ should "take any further action needed to complete the administrative record and issue a new decision." AR 786. Claimant argues that the ALJ failed to fulfill the Appeals Council's directive to develop the record, including search for the 1995 records and order additional cognitive testing. She states that she agreed not to oppose the voluntary remand because she expected the remand would result in a diligent search for and production of any records the Commissioner or ALJ found concerning the 1995 SSI determination. She contends that both the ALJ and the Social Security Administration erred by not developing the record on remand, stating the Social Security Administration "should have done something on remand beyond pointing to what was in the record already and asking the ALJ to address such records." Doc. 15 at 2. Claimant asserts "it is not even clear that [her] file is 'lost' given the lack of effort from [the Social Security Administration] to show why the 1995 file is not findable or the efforts to find and produce what is producible from the file." *Id.* at 3. The Commissioner responds that the ALJ followed the Appeals Council's order.

_____

*Shalala*, 48 F.3d 348, 353 n.8 (8th Cir. 1995) (collecting cases holding "that due process is violated when the [Commissioner] applies administrative res judicata to bar a later claim ex parte, without considering whether the claimant, in failing to appeal the earlier claim, had the mental capacity to understand the notice"). As the parties did not brief this issue, I decline to weigh in on the application of res judicata based on the 2012 claim.

On remand, the ALJ did not gather any additional documents or information to supplement the record. Nor did the ALJ order additional IQ testing or a consultative examination of Claimant. Instead, he reviewed the medical opinions already contained in the record, including the 2018 reports by Dr. Sims and a May 12, 2020 letter from Hillcrest Family Services, which was providing ongoing therapy to Claimant. AR 723; *see* AR 424-29, 431-34, 1021. That new letter stated:

> [Claimant] had been diagnosed with schizoaffective disorder-bipolar type and panic disorder. In addition, she had a history of attention deficit hyperactivity disorder and dyslexia with learning disabilities. In spite of [the fact that Claimant] has been compliant with treatment, she still struggles to control her auditory hallucinations, depression, and anxiety.

AR 1021. The ALJ stated that "these reports were not persuasive" because they did not address the time period at issue and did not support a finding of a disability prior to age 22. The ALJ also considered the prior administrative findings issued as part of the initial review and reconsideration that found insufficient evidence to evaluate the claim. AR 723; *see* AR 66-75, 83-91. The ALJ concurred, noting that treatment records dating back to 2008 were not pertinent. AR 723.

Here, I agree with Claimant that the ALJ did not fully comport with the directives of the Appeals Council on remand. Even though the Appeals Council did not specifically direct the ALJ to conduct a search for the lost 1995 file, it did instruct him to complete the record and indicated additional testing might be warranted. The Appeals Council directed the ALJ to seek evidence from a medical expert if necessary, and the ALJ's subsequent conclusion that evidence was lacking indicates it was indeed necessary.

Judge Strand has stated that a failure to comply with Appeals Council directives does not constitute legal error. "Because 42 U.S.C. § 405(g) authorizes judicial review solely to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial

review."[56]  Accordingly, I will not recommend reversal based solely on the failure to comply with the Appeals Council remand order.  However, the ALJ's decision not to develop the record or order additional cognitive testing is relevant to whether substantial evidence supports his denial of benefits at step two.

"A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."[57]  The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record."[58]  Absent unfairness or prejudice, remand is not required.[59]

Here, the record has a lack of definitive information and many inconsistencies as to Claimant's cognitive functioning and her 1995 SSI determination.  The only documents in the record from the period before Claimant turned 22 are educational records.  *See* AR 385-94, 404-09.  Those records demonstrate Claimant was in special education classes, she needed help with speech and language, she did not graduate from high school, and she received mostly failing grades in ninth grade in 1988.  She testified at the first hearing with the ALJ that she could not keep up with schoolwork and that she "didn't understand what was going on in school" and "would get things mixed up and confused."  AR 55, 59.  She also testified that she had many absences because she could not concentrate.  AR 58.  There are no IQ test results in the record from Claimant's time in school.

The record contains some treatment notes related to Claimant's mental health and substance abuse issues, with inconsistent assessments of Claimant.  These records do not contain IQ testing, but they do contain descriptions of how Claimant presented with

---

[56] *Vanepps v. Comm'r of Soc. Sec.*, No. C18-5-LTS, 2019 WL 1239857, at *7 (N.D. Iowa Mar. 18, 2019) (adopting report and recommendation); *see also Sanders v. Astrue*, No. 4:11CV1735 RWS (TIA), 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013), *report and recommendation adopted*, 2013 WL 1281998 (Mar. 27, 2013).

[57] *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006).

[58] *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

[59] *Id.*

24

respect to her intellectual capacity. At times she is described as appearing to have average intelligence. AR 490, 500. Other records describe her as having lower intelligence or a learning disability. For example, a 2004 notation by a case manager when Claimant was admitted to Richmond State Hospital stated that she read at a second-grade level, so her addiction recovery classes would have to be adapted to her limitations. AR 348.

The Social Security Administration also ordered cognitive testing in the summer of 2018. Despite two appointments, stressors, psychosis, and lack of effort rendered that testing of no value.

In addition, the record contains evidence that in August 1995, shortly after Claimant turned 24, she was awarded SSI benefits based on intellectual disability. The Social Security Administration has indicated that it lost Claimant's 1995 SSI folder, and this record does not appear to include any 1995 documents. Without the records from the 1995 SSI folder, there is a paucity of evidence about Claimant's intellectual disability from that time. As the ALJ noted at the remand hearing, "[T]here's a lost file and so, we have no idea what was in that lost file that would have been the basis of establishing disability back in 1995." AR 734-35.

As noted in the prior section, the information that does exist in the record about the 1995 claim is inconsistent. CDR records from 2018 and 2019 discuss the 1995 SSI claim and report different onset dates, including the day Claimant was born in 1972, the day before Claimant turned 22 in August 1994, and the date of the SSI decision in August 1995. AR 79, 249, 768, 1010. The ALJ, in turn, relied on a completely different onset date, concluding that the 1995 SSI decision found Claimant disabled as of the application date in June 1995. AR 723. The ALJ based this determination on "a review of the claimant's payment records." *Id.* The ALJ provided no citation for this onset date, and I agree with Claimant that there do not appear to be any payment history documents in the record.

The ALJ found that in the 1995 SSI claim, the Social Security Administration "never affirmatively adjudicated that the claimant had been disabled prior to age 22; and the fact that it was mistakenly referenced that the claimant had been disabled since the day before her 22nd birthday [in] one exhibit and since birth in another exhibit does not prohibit the undersigned from making a different finding with regard to this decision." AR 723. The ALJ concludes that those dates were mistakes but offers no support for that conclusion.

I agree with Claimant that there are indications that there is some relevant documentation about the 1995 claim that was considered and available but is absent from this record. What did the state agency consultants review that caused each of them to come to a different conclusion regarding the onset date for the 1995 SSI claim? In addition, where are the payment records that the ALJ found to be the "smoking gun" with regard to determining onset date? How do the documents from the 2012 CDB denial (relied on by the ALJ in the first decision) describe Claimant's 1995 SSI award?

Claimant also argues that the ALJ should have ordered another consultative examination with cognitive testing. This court has previously remanded when the record contained no actual IQ test results, and the underlying record contained inconsistencies on the claimant's cognitive functioning.[60] Intellectual disability "is not normally a condition that improves as an affected person ages. . . . Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."[61] Accordingly, a current IQ test would be probative

---

[60] *Heims v. Berryhill*, No. 16-CV-176-LRR, 2018 WL 1177931, at *5-6 (N.D. Iowa Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1175227 (Mar. 6, 2018).

[61] *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001).

26

of whether Claimant had an intellectual disability prior to reaching 22 years of age in 1994.[62]

This case appears highly unusual: the CDB claim requires consideration of a time frame approximately thirty years ago with a lost folder and scant evidence available from that time frame. Subsequent records discussing the 1995 claim are inconsistent in describing both the basis for disability and the onset date. Even though the Social Security Administration records are unclear or missing, Claimant's claim has been rejected for a lack of medical records or intellectual testing prior to August 1994. As Claimant asserts, the Social Security Administration "cannot lose a claimant's file, not develop the record via deciding whether to reconstruct the file, and then make a finding clearly inconsistent with the file [the Administration] did not show effort in finding or reconstructing." Doc. 15 at 9. It is nonsensical for the Social Security Administration to lose the relevant 1995 claim folder and then punish Claimant for not having documentation from that time period. I agree with Claimant that this case should be remanded for the Social Security Administration to make reasonable efforts to put together a record concerning the 1995 claim folder. POMS sets forth procedures for handling lost or destroyed folders.[63]

Both fairness and prejudice support remand for further development of the record. If the underlying documents from the 1995 SSI award were uncovered, that could have a significant impact on the evaluation of Claimant's CDB claim, because the central issue is whether there is evidence of her disability prior to turning 22. The ALJ did not find that Claimant did not have a cognitive impairment; rather, he based his decision on the lack of evidence and information from the relevant time frame. The assessments he

---

[62] *See **Maresh v. Barnhart***, 438 F.3d 897, 900 (8th Cir. 2006) (holding an IQ score from when claimant was 37, in conjunction with school records showing claimant "struggled in special education classes through the ninth grade, and then dropped out of school," sufficient to establish intellectual disability that onset before age 22).

[63] **POMS § DI 28035.020**.

deemed persuasive concluded there was insufficient evidence to evaluate the claim. It appears that some records from the 1995 SSI decision were utilized in the 2018 CDR, and SSI must add those documents to this record to better assess the basis for that initial award. In sum, the Social Security Administration should include in the record any available documents concerning the 1995 SSI award that it has, as well as make a documented effort to locate the lost folder.

Because the ALJ failed to develop the record, I recommend finding that substantial evidence does not support the ALJ's disability determination. Rather, the ALJ's finding was based on the lack of evidence, due to both a purportedly lost file and inconclusive evaluations, and there is no demonstration of any effort to supplement that dearth of evidence with additional information, which unfairly prejudiced Claimant. The consultative examiner did not rule out an intellectual disability; rather, she diagnosed impairments from psychosis and noted she suspected an intellectual disability but was unable to complete cognitive testing. Due to these unique circumstances, I recommend a remand to further develop the record with:

- efforts to locate the 1995 SSI folder and a detailed description of those efforts;

- all underlying documents that the Social Security Administration has related to the 1995 SSI award (including payment records) and the 2012 CDB denial; and

- additional consultative examination with IQ testing to get an accurate assessment of Claimant's cognitive abilities.[64]

---

[64] Claimant also argues that the ALJ erred in failing to recognize step 2 is a de minimis standard and should have concluded that the present record, including her education records, satisfy the de minimis standard of step two of a severe medically determinable impairment of a learning disorder prior to age 22, if not a borderline intellectual functioning or intellectual disability cognitive impairment. However, I will reserve judgment on this claim in view of my recommendation to remand to fully develop the record.

### B. *Appointments Clause Challenge*

Claimant argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution. The Eighth Circuit recently ruled that Commissioner Berryhill was validly serving as Acting Commissioner and thus her ALJ appointments were valid.[65] Therefore, I recommend rejecting Claimant's Appointments Clause challenge.

### IV.   CONCLUSION

I respectfully recommend that the district court **reverse and remand** the ALJ's decision with instruction to order a consultative examination to assess Claimant's IQ score and to supplement the record with all underlying documents pertinent to the 1995 SSI claim after a diligent search for that folder.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** on September 27, 2023.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[65] *Dahle v. Kijakazi*, 62 F.4th 424, 427-30 (8th Cir. 2023).