# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| EVON D. H.,[1]<br><br>  Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,<br>Commissioner of Social Security,<br><br>  Defendant. | No. 22-CV-1018-CJW-KEM<br><br>**ORDER** |

## I.   INTRODUCTION

This case is before the Court on a September 27, 2023 Report and Recommendation ("R&R") filed by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge. (Doc. 24). Judge Mahoney recommends the Court reverse and remand the decision rendered by the Commissioner of Social Security ("the Commissioner") denying Evon D. H.'s ("Claimant") application for childhood disability benefits ("CDB") benefits under Title II of the Social Security Act, 42 United States Code, Sections 401–434. Neither party has objected to the R&R. The deadline for such objections has expired. For the reasons stated below, the Court **accepts** Judge Mahoney's R&R without modification.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Court must affirm the Commissioner's decision "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence . . .." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Hum. Servs.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court, however, does not "reweigh the evidence presented to the

ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. BACKGROUND

The Court has reviewed the record and finds Judge Mahoney accurately summarized the pertinent facts and procedural history of this case.

> Claimant was born in August 1972. AR 721.4[2] She did not graduate from high school. The last entry in her education records is for ninth grade, when she received an F in most of her classes. AR 387. She reports that the highest grade of school she completed was tenth grade in 1988. AR 77, 176. Claimant received special education services in school, and she had many unexcused absences throughout grades 7, 8, and 9. AR 176, 324, 390, 404. The record contains a 2018 letter from Claimant's high school indicating that Claimant had received special education services "for her mild mental handicap." AR 404. Claimant's education records note she needed help with speech and language skills. AR 388. She worked

---

[2] "AR" refers to the administrative record. (Docs. 7-1 to 7-18).

4

for short periods between 1999 and 2006 as a cashier, cook, and housekeeper, and she reported that she has not worked since 2006. AR 176. Claimant has received substance abuse treatment and has a long history of mental health treatment consisting of medication, therapy, and multiple hospitalizations. AR 18-19, 73.

### *A. Prior Benefits*

Claimant previously applied for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, and was found disabled in 1995. AR 72, 722. A 2004 hospital admission for mental health treatment noted that Claimant was receiving SSI benefits. AR 323. She continued to receive benefits and did not go through a continuing disability review (CDR) until 2018 (when she filed the CDB application at issue here). *See* AR 72. An October 5, 2018 review by a state agency consultant for Claimant's CDR noted that it was a "lost folder claim" and that an August 17, 1995 decision had awarded Claimant benefits based on intellectual disability. AR 453. The state agency consultant stated that Claimant's residual functional capacity (RFC) as of August 1995 included marked limitations in making simple-work related decisions; marked limitations in concentrating, persisting, and maintaining pace; and moderate limitations in interacting with others. AR 447, 451, 454. She concluded:

> [Medical impairment] related to the ability to work is unable to be assessed because there is inadequate . . . information [on the original 1995 decision] to compare changes in symptoms, signs, and/or lab findings. Claimant has no more current RFC or functional limitations than shown at the [1995 decision] RFC, thus a continuance is warranted because [medical impairment] cannot be established.

AR 454. A different state agency consultant stated on October 9, 2018 that Claimant's SSI benefits would be continued for one year "due to lost folder issues," but noted that she "met the listing for [intellectual disability]" in the prior August 17, 1995 decision. AR 72, 76. An October 9, 2018 CDR cover form indicates that Claimant's disability began the day before she turned 22 in August 1994 and that her primary diagnosis was intellectual disorder and her secondary diagnosis was depression, bipolar, and related disorders. AR 79.

5

In response to a request for information about her 1995 claim, the Commissioner reported on January 3, 2019, that "[o]ur records show that you became disabled [in August 1972]" on the day she was born. AR 249.

Claimant's SSI benefits were again continued on August 21, 2020. AR 768. The cover form for this CDR review states that Claimant's disability began on August 17, 1995 (the date of the prior decision, and after Claimant turned 22), with a primary diagnosis of schizophrenia spectrum and other psychotic disorders and a secondary diagnosis of anxiety and obsessive-compulsive disorders. AR 768.

### B. *Childhood Disability Benefits (CDB)*

Claimant applied for childhood disability benefits on April 3, 2018. AR 84. Claimant alleged disability beginning in August 1994 on the day before she turned 22 years old. *Id.* She listed "learning disability" as her medical condition. *Id.*

On July 17, 2018, Claimant met with psychologist Jeannie Sims, PhD, for a consultative evaluation (CE) with cognitive testing. AR 425. Claimant reported that she sees and hears people who are not there and that the onset of her schizoaffective disorder was sometime between ages 17 and 22. AR 425. Dr. Sims reported that Claimant was rocking back and forth in the waiting room and appeared extremely frightened. AR 426. Dr. Sims also noted that the friend who accompanied Claimant helped her fill out answers, and Claimant exhibited memory problems. AR 425-27. Dr. Sims reported Claimant received an "extremely low" score on a mental functioning test she administered, but "[b]ecause [Claimant's] functioning at the time was strongly impacted by anxiety and psychosis, it is not valid as an estimate of her cognitive functioning." AR 427. Dr. Sims reported that Claimant struggled with recall and following simple directions, and she "estimate[d] cognitive functioning to be in the mild intellectual disability range." *Id.* Dr. Sims stated that Claimant "presented as actively psychotic with symptoms consistent with Schizoaffective Disorder, Bipolar Type, Generalized Anxiety Disorder (severe), and Panic Attacks," and noted she "also suspect[ed] an intellectual disability." AR 428. Dr. Sims did not administer formal cognitive testing because of Claimant's hallucinations, as "results would have reflected impairment due to psychosis more than intellectual functioning." *Id.*

The next month, on August 27, 2018, Claimant met with Dr. Sims again for cognitive testing. AR 431. At the beginning of that appointment, Claimant's accompanying friend informed Dr. Sims that Claimant's

6

daughter had recently been in a serious accident and noted Claimant did not understand why she could not be with her daughter, so the friend wished Dr. Sims "good luck" with testing. *Id.* Dr. Sims administered formal cognitive testing (the WAIS-IV), but the results were "not considered valid due to questions about effort and credibility." AR 433. Dr. Sims noted that Claimant achieved the lowest possible score in every category and that an individual with those scores "would not be able to live alone, even with ample support." AR 433-34. Dr. Sims concluded Claimant "completed cognitive testing in an invalid manner," which "calls into question the symptom presentation and history and heightens the need for reliable collateral information." AR 434.

Claimant's CDB application was denied on initial review in October 2018 and on reconsideration in December 2018. AR 76, 90-91. Both state agency examiners concluded the evidence in the file was insufficient to show an impairment prior to Claimant's twenty-second birthday in August 1994. *Id.* On initial review, the state agency consultant stated:

> [T]here are treatment notes in file dating back to 2008, [but] this is after claimant turned 22 years of age. Claimant was allowed disability benefits dating back to age 22 for [intellectual disability]. However, the prior folder has been destroyed and there has never been a CDR completed. Claimant's apparent prior [medically determinable impairment] of [intellectual disability] is completely inconsistent with current evidence in file. Claimant's presentation at the initial CE and the subsequent CE for testing was quite extreme. She produced an invalid intellectual assessment secondary to lack of effort. Claimant did not know her correct age, birthday, or address and rocked almost continuously. Other medical records in file do not describe claimant as so impaired. For example, none of the medical records indicate significant concerns regarding her cognitive abilities or even a rule out diagnosis of [borderline intellectual functioning] or [intellectual disability]. At the time of her 5/18 psychiatric appointment . . ., [mental status examination] was within normal limits and she appeared to be of "average" intelligence. School records document that claimant received "special education services for her mild mental handicap," . . . . [but] this was not further clarified in terms of what that might indicate in terms of a diagnosis.

7

AR 74. The consultant then recommended review of Claimant's SSI benefits for possible fraudulent activity. *Id.*

Claimant requested review before an ALJ. The ALJ held an administrative hearing by video on December 2, 2019. AR 15, 45. Claimant testified about her difficulties in school including confusion, lack of understanding, and hallucinations. AR 55, 59-60. On January 23, 2020, the ALJ issued an unfavorable decision. AR 15-20. The ALJ outlined the familiar five-step process set forth in the regulations for determining disability. *Id.* At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date in August 1994. AR 17. At step two, the ALJ found that prior to the date Claimant reached 22 years old, "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." AR 18. The ALJ reviewed the medical records and evaluations, including those of Dr. Sims, and noted the lack of evidence in the file prior to 2004. AR 19. The ALJ found "[t]here is no evidence of ANY diagnosed impairment WHATSOEVER prior to age 22." *Id.* The ALJ rejected Claimant's argument that her prior SSI award in 1995 established disability before age 22 under collateral estoppel principles. AR 18. The ALJ noted "there is no evidence the claimant was paid [SSI] benefits prior to age 22." *Id.* The ALJ also stated that the 1995 disability decision was based on RFC (at steps 4 and 5), rather than meeting a listing (at step 3), and that it was issued after Claimant turned 22 and thus did not establish disability prior to age 22. AR 18. The ALJ cited one of the state agency consultant's descriptions of the 1995 decision from the October CDR, which was exhibited, as well as "associated documents from the claimant's prior CDB filing in 2012" (which do not seem to be in the record). AR 18,454.

The Appeals Council denied review on her CDB claim. AR 1. Claimant then filed an action in this court. Claimant's complaint asserted (among other things) that the ALJ erred by not applying collateral estoppel principles and in developing the record concerning Claimant's limitations prior to age 22. The court granted the parties' joint motion to extend the briefing deadlines asserting that "[t]his extension is needed for Social Security to find and provide what it is able from a 1995 award file." Then before any briefs were filed, the Commissioner filed an unopposed (boilerplate) motion to remand for further administrative proceedings under sentence four of 42 U.S.C. § 405(g), which the court granted.

The Appeals Council issued a remand order on November 1, 2021. AR 784-86. The Appeals Council found "[f]urther evaluation as to whether

8

the claimant had a severe, medically determinable impairment prior to age 22 is necessary." AR 784. The Appeals Council stated the ALJ "did not address evidence in the administrative record that could indicate the claimant had been found disabled prior to 22"—specifically, the October 9, 2018 CDR form (stating Claimant's disability began the day before she turned 22) and the January 3, 2019 letter (stating Claimant's disability began the day she was born). AR 785. The Appeals Council directed the ALJ on remand to "[d]etermine whether the claimant had a severe medically determinable impairment and was disabled prior to age 22," and "if necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments." *Id.* The Appeals Council also instructed the ALJ to hold a new hearing and "take any further action needed to complete the administrative record and issue a new decision." AR 786.

      The ALJ held a new hearing by video on March 30, 2022. AR 730. The only new evidence consisted of updated earnings records, mental health treatment records from 2020, a 2020 letter from Claimant's therapist, and recent screenshots of Claimant's social media account from the CDR review. AR 881-1026. On April 14, 2022, the ALJ issued an unfavorable decision. AR 719-24. The ALJ again determined at step 2 that prior to the date Claimant reached 22 years old, "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." AR 722. The ALJ continued to rely on the lack of medical records and intellectual testing in the record prior to Claimant turning 22. *Id.* The ALJ rejected the application of collateral estoppel based on the two SSI documents identified by the Appeals Council. *Id.* The ALJ found that because the current CDB "claim is a Title II claim," the prior SSI claim under Title XVI "cannot preclude/estop adjudication of the [CDB] claim," because the application of collateral estoppel requires "the same title of social security." AR 722. The ALJ concluded that in the prior SSI claim, "[t]he agency never affirmatively adjudicated that the claimant had been disabled prior to age 22; and the fact that it was mistakenly referenced that the claimant had been disabled since the day before her 22nd birthday [in] one exhibit and since birth in another exhibit does not prohibit the undersigned from making a different finding with regard to this decision." AR 723. The ALJ rejected Claimant's testimony that "she has been receiving benefits since she turned 18" and that "she received benefits as a child as well," noting that "a review of the claimant's payment records reveals that she actually has only been receiving benefits since 1995 (well

9

after her 22nd birthday) with an Established Onset Date of her previous SSI . . . application date in June 1995." *Id.* The ALJ did not offer a citation to support this proposition, and the record does not appear to contain these payment records.

      Claimant filed written exceptions dated April 26, 2022. AR 705-07. Believing the exceptions to be untimely (further addressed below), the Appeals Council did not rule on the exceptions. Claimant has since withdrawn the exceptions. Doc. 23.

      On August 12, 2022, Claimant filed a complaint in this court, seeking judicial review of the Commissioner's decision (Doc. 1). The parties briefed the issues (Docs. 12-15), and the Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

(Doc. 24, at 2-10 (alterations in original) (footnotes omitted)).

## IV. DISCUSSION

Claimant argued the ALJ erred at step two in failing to find she suffered from a mental impairment. Claimant argued the ALJ incorrectly applied the doctrine of collateral estoppel. She also contended that evidence of her mental disability should have been more fully developed, but even without supplementation of the record, the ALJ erred in finding she did not meet the de minimus standard of step two. Last, claimant also raised an Appointments Clause challenge. Because the parties did not object to Judge Mahoney's R&R, the Court reviewed it for clear error.

### A. *Collateral Estoppel*

In her R&R, Judge Mahoney found the record was not clear whether the prior 1995 disability determination was based on the listings. Although some evidence suggests as much (AR 76), other evidence suggests that the prior 1995 disability determination was based on an RFC finding (AR 18, 454). (Doc. 24, at 20). In addition, Judge Mahoney found the ALJ did not make it past step two, finding that there was no evidence Claimant suffered from a medically determinable impairment prior to age 22. (*Id.*). Judge Mahoney reasoned that, whether the prior 1995 determination was based on the

10

listings (at step three) or based on RFC (at steps four and five), Claimant was necessarily found to have suffered from a medically determinable impairment (at step two). (*Id.*). Judge Mahoney further reasoned that, although collateral estoppel might not apply to the ultimate disability determination (if the prior determination were based on the listings), it could apply to establish that Claimant suffered from a severe medically determinable impairment (intellectual disability). (*Id.*). For those reasons, and others, Judge Mahoney recommended the Court find that the ALJ's rejection of collateral estoppel based on the 1995 decision that claimant suffered from intellectual disability, a severe medically determinable impairment, is not supported by substantial evidence and that further development of the record is required. (*Id.*, at 21)

The Court agrees with Judge Mahoney's reasoning. The record is unclear whether the time frame covered by the 1995 claim overlaps with the time frame of the current claim. The record is also unclear as to whether the 1995 SSI award was based on Listing 12.05, which could determine whether claimant's disability began prior to age 22. Thus, the Court adopts Judge Mahoney's recommendation and finds that the ALJ's rejection of collateral estoppel based on the 1995 decision is not supported by substantial evidence on this record and further development of the record is necessary.

### B. *Development of the Record*

Claimant argues the ALJ failed to fully develop the record on remand. Judge Mahoney found that on remand, the ALJ did not gather any additional documents or information to supplement the record. (Doc. 24, at 23). She also found the ALJ did not order additional IQ testing or a consultative examination of Claimant. (*Id.*). Instead, Judge Mahoney found the ALJ reviewed the medical opinions already contained in the record. (*Id.*). Judge Mahoney stated:

11

> Here, I agree with Claimant that the ALJ did not fully comport with the directives of the Appeals Council on remand. Even though the Appeals Council did not specifically direct the ALJ to conduct a search for the lost 1995 file, it did instruct him to complete the record and indicated additional testing might be warranted. The Appeals Council directed the ALJ to seek evidence from a medical expert if necessary, and the ALJ's subsequent conclusion that evidence was lacking indicates it was indeed necessary.

(*Id.*). Because the ALJ failed to develop the record, Judge Mahoney found "the record has a lack of definitive information and many inconsistencies as to Claimant's cognitive functioning and her 1995 SSI determination." (*Id.*, at 24).

Considering the totality of the circumstances in what Judge Mahoney found to be a "highly unusual" case (*Id.*, at 27), she concluded:

> Both fairness and prejudice support remand for further development of the record. If the underlying documents from the 1995 SSI award were uncovered, that could have a significant impact on the evaluation of Claimant's CDB claim, because the central issue is whether there is evidence of her disability prior to turning 22. The ALJ did not find that Claimant did not have a cognitive impairment; rather, he based his decision on the lack of evidence and information from the relevant time frame. The assessments he deemed persuasive concluded there was insufficient evidence to evaluate the claim. It appears that some records from the 1995 SSI decision were utilized in the 2018 CDR, and SSI must add those documents to this record to better assess the basis for that initial award. In sum, the Social Security Administration should include in the record any available documents concerning the 1995 SSI award that it has, as well as make a documented effort to locate the lost folder.
> Because the ALJ failed to develop the record, I recommend finding that substantial evidence does not support the ALJ's disability determination. Rather, the ALJ's finding was based on the lack of evidence, due to both a purportedly lost file and inconclusive evaluations, and there is no demonstration of any effort to supplement that dearth of evidence with additional information, which unfairly prejudiced Claimant. The consultative examiner did not rule out an intellectual disability; rather, she diagnosed impairments from psychosis and noted she suspected an intellectual disability but was unable to complete cognitive testing. Due to

these unique circumstances, I recommend a remand to further develop the
record with:
> * efforts to locate the 1995 SSI folder and a detailed description of those efforts;
> * all underlying documents that the Social Security Administration has related to the 1995 SSI award (including payment records) and the 2012 CDB denial; and
> * additional consultative examination with IQ testing to get an accurate assessment of Claimant's cognitive abilities.

(*Id.*, at 27-28 (footnote omitted)).

For all the reasons stated in Judge Mahoney's thorough and careful analysis, the Court agrees and adopts Judge Mahoney's recommendation. The record here clearly requires further development for the Commissioner to make an informed decision about Claimant's case. The ALJ may or may not be correct, but on this record there is no way for the Court to find that substantial evidence supports the ALJ's decision.

### C. Appointment Clause Challenge

Judge Mahoney rejected Claimant's challenge to the ALJ's appointment, finding a recent binding Eighth Circuit Court of Appeals decision, *Dahle v. Kijakazi*, 62 F.4th 424, 427-30 (8th Cir. 2023), forecloses this argument. (Doc. 24, at 29 & 29 n.65). The Court agrees.

### V. CONCLUSION

For these reasons:

1. The Court **accepts** Judge Mahoney's R&R (Doc. 24) without modification. *See* 28 U.S.C. § 636(b)(1).

2. Pursuant to Judge Mahoney's recommendation:

   a. The Commissioner's determination is **reversed** and this matter is **remanded** to the Commissioner for further proceedings as described by Judge Mahoney, specifically with instruction to order a consultative examination to assess Claimant's IQ score and to

13

Case 2:22-cv-01018-CJW-KEM   Document 25   Filed 10/20/23   Page 13 of 14

supplement the record with all underlying documents pertinent to the 1995 SSI claim after a diligent search for that folder.

**IT IS SO ORDERED** this 20th day of October, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa